1  Craig Solomon Ganz (Bar No. 023650)
   Janel M. Glynn (Bar No. 025497)
2  Tyler J. Carrell (Bar No. 028020)
   **GALLAGHER & KENNEDY, P.A.**
3  2575 East Camelback Road
   Phoenix, Arizona  85016-9225
4  Telephone:    (602) 530-8000
   Facsimile:    (602) 530-8500
5                craig.ganz@gknet.com
                 janel.glynn@gknet.com
6                tyler.carrell@gknet.com
   *Attorneys for Best Western International, Inc.*
7
             **IN THE UNITED STATES BANKRUPTCY COURT**
8
                **FOR THE DISTRICT OF PUERTO RICO**
9

<table>
<tr><td>10</td><td>In re:</td><td>Case No. 11-06620 (ESL)</td></tr>
<tr><td>11</td><td>HOTEL AIRPORT, INC.,</td><td>Chapter 11</td></tr>
<tr><td>12</td><td>        Debtor.</td><td>**PRE-HEARING MEMORANDUM OF BEST WESTERN INTERNATIONAL, INC. IN SUPPORT OF:**</td></tr>
<tr><td>13</td><td></td><td></td></tr>
<tr><td>14</td><td></td><td>**MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**</td></tr>
<tr><td>15</td><td></td><td></td></tr>
<tr><td>16</td><td></td><td>**Hearing Date: 4/11/14**</td></tr>
<tr><td>17</td><td></td><td>**Hearing Time: 9:30 a.m.**</td></tr>
</table>

18

19        This Pre-hearing Memorandum is filed by Best Western International, Inc. ("Best

20  Western"), a creditor and party-in-interest in the above-captioned Chapter 11 case of

21  Hotel Airport, Inc. (the "Reorganized Debtor"), in connection with the April 11, 2014

22  hearing (the "4/11 Hearing") on the *Motion for Allowance and Payment of Administrative*

23  *Expense Claim* ("Administrative Claim Motion") [Dkt. #299].  Since the parties are not

24  submitting a joint-pre-hearing statement prior to the Hearing, this Memorandum is being

25  filed by Best Western to assist the Court with the issues of fact and law that will be

26  presented during the Hearing.  Unless otherwise indicated, capitalized terms used in this

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

1   Memorandum will have the same meaning as the Administrative Claim Motion [Dkt.

2   #299] and the *Joint (I) Motion For Leave To File Reply; And (II) Reply Of Best Western*

3   *In Support Of The Administrative Claim Motion* (the "Reply") [Dkt. #306].

4   **I.     RELIEF REQUESTED BY BEST WESTERN.**

5   Best Western's Administrative Claim Motion seeks an order from the Court (i)

6   allowing the Administrative Expense Claim of Best Western in the amount of at least

7   $490,723.26 (the "Administrative Expense Claim") incurred post-petition and pre-

8   confirmation under the *Best Western International Membership Application and*

9   *Agreement* dated March 7, 2008 (the "Membership Agreement") in connection with the

10  premises commonly referred to as the San Juan Airport Hotel (the "Hotel"); and (ii)

11  directing the Reorganized Debtor to immediately pay the Administrative Expense Claim

12  to Best Western.  As demonstrated below, the Administrative Expense Claim arises from

13  the Reorganized Debtor's concealed and unauthorized use of the Best Western Marks

14  after it assumed the Membership Agreement pursuant to Bankruptcy Code § 365.

15  For all of the reasons set forth below, in the Administrative Claim Motion and

16  Reply, Best Western respectfully submits that it has met its burden in establishing that its

17  Administrative Expense Claim is entitled to an administrative priority pursuant to

18  Bankruptcy Code §§365 and 503(b)(1)(A).

19  **II.    FACTUAL AND PROCEDURAL BACKGROUND WITH CITATIONS TO
20         THE RECORD.**

    The factual and procedural background supporting the Administrative Expense

21  Claim is set forth in the *Motion And Memorandum Of Law To Dismiss Complaint*

22  *Pursuant To Fed.R.Bankr. P. 7012(B)* (the "Motion to Dismiss") filed by Best Western in

23  the Adversary No. 13-ap-00259 (ESL) (the "Adversary").   The Motion to Dismiss

24  chronicles the factual and procedural background relevant to this matter, with detailed

25  citations to the record in this Bankruptcy Case for which the Court may take judicial

26  notice of.  Although the claims and causes of action asserted by the Reorganized Debtor

1    in the Adversary relate exclusively to post-confirmation claims and actions, the claims

2    and causes of action alleged nevertheless arise out of the same Membership Agreement

3    that was terminated by the Reorganized Debtor giving rise to the Administrative Expense

4    Claim. Consequently, Best Western hereby incorporates the Motion to Dismiss into this

5    Memorandum.

6         This Memorandum is further supported by: (1) the *Declaration Of Kylie Crawford*

7    *TenBrook In Support Of Administrative Expense Claim Of Best Western* attached to this

8    Memorandum as Exhibit A (the "TenBrook Decl."); (2) the *Declaration Of Dwayne*

9    *Joseph Riccio* attached to this Memorandum as Exhibit B (the "Riccio Decl.") and; (3)

10    the *Declaration Of Brent Edward Munson* attached to this Memorandum as Exhibit C

11    (the "Munson Decl.").[1] Mrs. TenBrook, Mr. Riccio and Mr. Munson are all Best Western

12    employees and their sworn declarations evidence, among other things:

13         1.      The factual validity and basis of the Administrative Expense Claim;

14         2.      The dates used to calculate the Administrative Expense Claim; and

15         3.      The calculation of the Administrative Expense Claim.

16    As set forth below, the remaining issues before this Court are either uncontested factual

17    issues or statutory and legal authority in support of Best Western's Administrative

18    Expense Claim.

19    **III.**      **ISSUES OF FACT AND LAW NOT DISPUTED BY THE PARTIES.**

20         The Reorganized Debtor does not dispute in its Objection any of the following

21

22    [1] The Court may consider the Declarations and supporting records and documents under,

23    among other authority, Fed. R. Evid. 803(6), the business records exception to the
hearsay rule given that they are accompanied by a certification that: (1) they were made
at or near the time of the events reflected in the documents; (2) they were created in the

24    normal course of business; and (3) it is the regular course of business of Best Western to
make these records. *See* Fed.R.Evid. 803(6) ("A memorandum, report, record, or data

25    compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or
near the time by, or from information transmitted by, a person with knowledge, if kept in

26    the course of a regularly conducted business activity, and if it was the regular practice of
that business activity to make the memorandum, report, record or data compilation [are
not excluded by the hearsay).

1    facts or legal conclusions alleged by Best Western in the Administrative Claim Motion.

2    Consequently, the Court can (and should) deem these facts and conclusions admitted by

3    the Reorganized Debtor with regard to the Administrative Claim Motion:

4         1.    The Reorganized Debtor entered into the Membership Agreement with Best

5    Western. *See also* Dkt. #54 at ¶5(Reorganized Debtor's Motion to Assume

6    Membership Agreement); and TenBrook Decl. at ¶7;[2]

7         2.    The Reorganized Debtor assumed the Membership Agreement pursuant to

8    Bankruptcy Code § 365(a) effective December 14, 2011. *See also* Dkt. #66 (order

9    granting assumption of Membership Agreement);

10        3.    When the Reorganized Debtor assumed the Membership Agreement, it

11   created an administrative obligation of its bankruptcy estate. Post-assumption, all

12   liabilities incurred by the Reorganized Debtor in performing (or breaching) the

13   Membership Agreement should be treated under the Bankruptcy Code as an

14   administrative priority expense. *See* Administrative Claim Motion at p.7-8; *see*

15   *also Bildisco,* 465 U.S. at 531-32, 104 S.Ct. 1188 (1984); *see also In re Frontier*

16   *Props., Inc.* 979 F.2d 1358 (9th Cir.1992); *In re FBI Distribution Corp.*, 330 F.3d

17   36, 42 (1st Cir. 2003); *see also, e.g., In re Hudson,* 168 B.R. at 449 (Debtor's post-

18   assumption breach is afforded priority as an administrative expense claim under

19   11 U.S.C. § 365(g)(2)(A)); *In re Vantage Investments*, 328 B.R. 137

20   (Bankrtcy.W.D.Missouri, 2005) (bankruptcy court determined that post-

21   assumption breach of Best Western membership agreement damages were entitled

22

23   [2] This Court can and should consider all statements made by the Reorganized Debtor in
     prior motions or other memoranda filed in this Bankruptcy Case as judicial admissions.
     *See, e.g., Baxter v. MBA Grp. Ins. Trust Health & Welfare Plan*, 958 F. Supp. 2d 1223,
24   1233 (W.D. Wash. 2013) (plaintiff not permitted by the court to abandon an argument in
     a motion for summary judgment and take a different position in a later filed brief) (citing
25   *Gospel Missions of Am. v. City of L.A.,* 328 F.3d 548, 557 (9th Cir.2003) (holding courts
     "have discretion to consider a statement made in briefs to be a judicial admission ...
26   binding on ... the trial court."); *see also Purgess v. Sharrock,* 33 F.3d 134, 144 (2d
     Cir.1994) ("A court can appropriately treat statements in briefs as binding judicial
     admissions of fact.")).

1  to administrative claim priority);

2  4.    On or about July 2, 2012, Best Western notified the Reorganized Debtor

3  that it terminated the Membership Agreement (the Reorganized Debtor disputes

4  whether Best Western's termination of the Membership Agreement was effective

5  (*see infra* discussion at IV(A)-(B)); *see* also *TenBrook Declaration* at ¶19; and

6  Cancellation Letter attached to the Administrative Expense Motion as Exhibit 2;

7  5.    The Reorganized Debtor did not remove all Best Western Marks on or after

8  July 17, 2012.  Instead, the Reorganized Debtor continued to use the Best Western

9  Marks on and after July 17, 2012.  *See also* TenBrook Decl. at ¶¶22-23; Munson

10  Decl. at ¶¶7-10; and Riccio Decl. at ¶¶7-12;

11  6.    The Reorganized Debtor's use of the Best Western Marks benefitted its

12  bankruptcy estate.  *See* Administrative Claim Motion at p.7-8;

13  7.    The Reorganized Debtor failed to pay Best Western for its use of the Best

14  Western Marks on or after July 17, 2012.  *See also* TenBrook Decl. at ¶35;

15  8.    On March 21, 2013, the Court entered an order confirming the Reorganized

16  Debtor's plan of reorganization.  *See also* Dkt. #261 (the Confirmation Order);

17  9.    Under the Membership Agreement (assuming the termination by Best

18  Western was valid) the Reorganized Debtor is obligated to pay $1,994.81 per day

19  for the unauthorized use of the Best Western Marks, for a total of $490,723.26

20  (again, assuming the termination by Best Western was valid).  *See also* TenBrook

21  Decl. at ¶¶22 and 33; and

22  10.    The Administrative Claim Motion is timely pursuant to § 503(a).  *See*

23  Administrative Claim Motion at p.7-8.

24

25

26

**IV.    ADDITIONAL EVIDENCE SUPPORTING THE AMOUNT AND CALCULATION OF CLAIM.**

As detailed by the sworn declarations of Ms. TenBrook, Mr. Riccio and Mr. Munson, Best Western has met its burden in establishing the amount and calculation of the Administrative Expense Claim:

**A.    Evidence Of Reorganized Debtor's Concealed and Unauthorized Use of the Best Western Marks During the Administrative Expense Period.**

**(i)    Unauthorized Use On August 6, 2012.**

1.    On August 6, 2012, Mr. Riccio, Best Western Manager of Regional services, visited the San Juan Luis Muñoz Marín International Airport located in San Juan, Puerto Rico (the "San Juan Airport") and the Hotel.  *See* Riccio Decl. at ¶7.

2.    While at the San Juan Airport, Mr. Riccio saw the Best Western Marks displayed on the sign of the Hotel facing the check-in counter for British Airways in Terminal D of the San Juan Airport. *See* Riccio Decl. at ¶8.

3.    While at the Hotel on August 6, 2012, Mr. Riccio also saw the Best Western Marks displayed on at least the following Hotel items:

a.    Guest shampoo bottles;

b.    Guest soap wrappers;

c.    Guest phones outside of the Hotel elevator;

d.    Guest phones in the Hotel Lobby;

e.    Telephone in Hotel room #529; and

f.    Housekeeping carts.

*See* Riccio Decl. at ¶9.

4.    Photographs evidencing the continued and unauthorized use of the Best Western Marks by the Reorganized Debtor on August 6, 2012 are attached to the Riccio Decl. as Exhibit A.  *See* Riccio Decl. at ¶10.

- 6 -

1 **(ii)    Discovery Of Unauthorized Use On June 7, 2013.**

2    5.    During the week of June 7, 2013, Mr. Munson, Best Western Manager of

3 Regional services, visited the Hotel.  *See* Munson Decl. at ¶7.

4    6.    While at the Hotel, Mr. Munson saw the Best Western Marks displayed on

5 at least the following Hotel items:

6         a.    Guest shampoo bottles;

7         b.    Guest soap wrappers;

8         c.    Guest phones outside of the Hotel elevator;

9         d.    Guest phones in the Hotel Lobby;

10         e.    Telephone in Hotel room #529; and

11         f.    Housekeeping carts.

12 *See* Munson Decl. at ¶8.

13    7.    Photographs evidencing the continued and unauthorized use of the Best

14 Western Marks by the Reorganized Debtor during the week of June 7, 2013 are attached

15 to the Munson Decl. as Exhibit A.  *See* Munson Decl. at ¶9.

16    **B.    Membership Agreement And Calculation of Claim.**

17    8.    Pursuant to the Membership Agreement, the Reorganized Debtor agreed

18 that the Best Western License shall terminate upon termination of the Membership

19 Agreement.  *See* TenBrook Decl. at ¶14; *see also* Membership Agreement attached to the

20 TenBrook Decl. as Ex. A, at ¶22.  In the event the Membership Agreement terminated,

21 the Reorganized Debtor further agreed to "remove from public view and cease using" all

22 Best Western Marks and all other references to Best Western, and to remove any device

23 or design containing any part of any Best Western symbol, within 15 days of the date of

24 termination. *Id*.

25    9.    Additionally, upon termination of the License, the Reorganized Debtor

26 agreed that it would "actively take steps as may be necessary to cause the cessation of all

- 7 -

advertising and distribution of promotional material containing any Best Western Symbol." *See TenBrook Decl.* at ¶15.

10.    Further, under the Membership Agreement, if the Reorganized Debtor failed to immediately remove all Best Western Marks by July 17, 2012, the Reorganized Debtor was required to pay $1,994.81 per day for the unauthorized post-termination use of the Best Western Marks. *See* TenBrook Decl. at ¶21; *see also* Membership Agreement at ¶24 (daily damages for continued post-termination use of the Best Western Marks calculated at the rate of 15% of the meant of the Hotels' room rates per room per day multiplied by the total number of rooms).

11.    Pursuant to the damages provision of the Membership Agreement, Best Western calculates the damages owed by the Reorganized Debtor during the Administrative Expense Period as follows:

| | |
|---|---|
| Per diem damages under Membership Agreement: | $1,994.81 |
| No. of days between effective date of termination of the Membership Agreement (7/18/12) and the Confirmation Date (3/21/14) or 246 days: | X     246 |
| **Total amount owed:** | **$490,723.26** |

*See* TenBrook Decl. at ¶22; *see also Administrative Expense Motion* at p. 8.   Therefore, pursuant to the Membership Agreement, the Reorganized Debtor owes Best Western at least $49,723.26 for its unauthorized use of the Best Western Marks during the Administrative Expense Period.

V.    <u>LEGAL ANALYSIS OF LIMITED ISSUES BEFORE THE COURT.</u>

The *only* legal or factual objections raised by the Reorganized Debtor to the Administrative Claim Motions are set forth in only a few paragraphs of the Objection and include: (i) that Best Western's termination of the Membership Agreement is purportedly void because it violated the automatic stay of Bankruptcy Code § 362 (*see* Objection at

1   ¶8 incorporating the Adversary Complaint Count Two);[3] and (ii) Best Western is

2   allegedly barred from seeking an administrative claim in connection with the

3   Reorganized Debtor's concealed and unauthorized use of the Best Western Marks post-

4   termination and pre-confirmation under the Stipulation and agreed form of Final Decree

5   (*see* Objection at ¶¶8-16).  For the reasons below these limited objections fail to rebut the

6   clear and undisputed evidence that: (i) the Reorganized Debtor assumed the Membership

7   Agreement; (ii) the Reorganized Debtor used the Best Western Marks during the

8   Administrative Expense Period; (iii) the Reorganized Debtor's unauthorized use of the

9   Best Western Marks benefitted its bankruptcy estate; and (iv) the Reorganized Debtor

10  failed to pay Best Western for the post-termination and unauthorized use of the Best

11  Western Marks.  Consequently, for all of the reasons below, the Court can and should

12  approve the Administrative Expense Motion over the Objection of the Reorganized

13  Debtor:

14          **A.      Termination Of Membership Agreement Did Not Violate The Stay.**

15          In Count Two of the Adversary Complaint, the Reorganized Debtor claims Best

16  Western violated the automatic stay of Bankruptcy Code §362(a)(3) when it terminated

17  the Membership Agreement.  *See* Adversary Complaint, Dkt. #1 at pp. 10-12.   The

18  Reorganized Debtor appears to argue through its reference to the Adversary Complaint in

19  its Objection that it disputes the termination of the Membership Agreement by Best

20  Western.  For the reasons below, termination of the Membership Agreement was valid

21  and effective July 17, 2012.

22          Section 362(a)(3) prohibits "any act to obtain possession of property of the estate

23  or of property from the estate or to exercise control over property of the estate."   Pre-

24  assumption, the law is clear: Stay relief is required before a non-debtor party to a contract

25

26  _____
    [3] The Objection incorporates at ¶8 the entire Adversary Complaint filed by the
    Reorganized Debtor.  Counts One and Two of the Adversary Complaint, however, appear
    to be the only counts relevant to the Administrative Claim Motion or Objection.

1    may terminate a prepetition contract. Here the issue is whether the automatic stay

2    applies to the enforcement of the Best Western Membership Agreement *after* it was

3    assumed by the Debtor. Bankruptcy courts have unanimously concluded that the

4    automatic stay does *not* apply to acts done post-petition with regard to post-petition

5    property of the estate. *See e.g., In re Plexus Enter., Inc*., 289 B.R. 778, 779 (Bankr. M.D.

6    Fla. 2002) (post-petition insurance contracts - although property of the estate - are not

7    subject to the automatic stay); *In re Hudson*, 168 B.R. 448, 449 (Bankr. S.D. Ga. 1994)

8    ("As the stay of § 362(a) does not prohibit the collection of a post-petition debt from

9    postpetition property of the debtor, stay relief was not necessary for the creditor to pursue

10    collection of its postpetition debt from property of the debtor."). The Reorganized

11    Debtor, by and through its Objection has failed to rebut this well established case law.

12        Here, the Best Western Membership Agreement, although originally a prepetition

13    contract, was assumed by the Reorganized Debtor postpetition. This fact is not, and quite

14    frankly cannot, be disputed by the Reorganized Debtor. Upon assumption, a new

15    postpetition obligation was created and the assumed contract became *postpetition*

16    property of the estate. *See, e.g. In re Wright*, 256 B.R. 858, 860 (Bankr. W.D.N.C. 2001)

17    (Bankruptcy court held that once a prepetition contract is assumed postpetition, the

18    effects of a subsequent breach of its terms by the debtor are no longer treated as

19    prepetition obligations. "Assumption has been aptly described as: an act of

20    administration that create[s] an obligation of the postpetition bankruptcy estate which is

21    legally distinct from the obligations of the parties prior to the assumption. Any breach of

22    the assumed obligations, whether in the form of a default or a formal rejection of the

23    lease thereby constitutes a breach by the postpetition debtors of postpetition

24    obligations."); *In re Enderle*, 352 B.R. 444, 446 (Bankr. E.D. Mich. 2006) ("A breach of

25    the assumed obligations therefore constitutes a post-petition breach of post-petition

26    obligations under 11 U.S.C. § 365(g)(2)(A), and is afforded administrative expense

priority."). Since the assumed Membership Agreement constitutes postpetition property

1  of the estate, Best Western did not (and could not have) violated the stay when it noticed

2  termination of the agreement.

3          **B.      <u>The Reorganized Debtor Is Estopped From Challenging Termination.</u>**

4          More importantly, the Reorganized Debtor is judicially estopped from challenging

5  the termination of the Membership Agreement.  After termination of the Membership

6  Agreement, the Reorganized Debtor admitted to this Court that "[a]fter recently

7  exhausting said negotiation efforts [with Best Western], **debtor has decided** that the

8  franchise benefits are not worth the cost and requirements that Best Western insists upon.

9  Hence, debtor shall continue operating its hotel business (and effect its reorganization)

10  without being under the Best Western membership, as it has done since July 2012."

11  [Emphasis Added] *Answer to Best Western's Objection to Confirmation* [Dkt. #240] at ¶

12  10 (the "<u>Admission of Termination</u>").  This admission that the Membership Agreement

13  was terminated undermines any argument by the Reorganized Debtor that Best Western

14  somehow terminated the agreement improperly or without the express consent and

15  agreement of the Reorganized Debtor.

16          Consistent with the Admission of Termination, the Reorganized Debtor and Best

17  Western subsequently entered into the Stipulation resolving all disputed membership fees

18  for the time period in which the Reorganized Debtor assumed the Membership

19  Agreement until its termination, which was approved by the Court.  *See* Dkt #280.  The

20  Court's Final Decree Order was based on Hotel Airport's representations on the record

21  that all contested matters had been resolved and that the estate had been fully

22  administered.  *Id*., Dkt. #282.  Among those matters resolved through the Bankruptcy

23  Case and prior to the Final Decree was the termination of the Membership Agreement.

24  Therefore, Hotel Airport is now and forever judicially estopped from arguing the

25  Membership Agreement was not properly terminated.  *See State of N.H. v. State of*

26  *Maine*, 532 U.S. 742, 749; 121 S. Ct. 1808; 149 L. Ed. 2d 968 (2001), *citing Davis v.*

*Wakelee*, 156 U.S. 680, 689, 39 L. Ed. 578, 15 S. Ct. 555 (1895) (The purpose of the

1    concept of judicial estoppel is that, "[w]here a party assumes a certain position in a legal

2    proceeding, and succeeds in maintaining that position, he may not thereafter, simply

3    because his interests have changed, assume a contrary position, especially if it be to the

4    prejudice of the party who has acquiesced in the position formerly taken by him."); *see*

5    *also Perry v. Blum*, 629 F.3d 1, 8 (1st Cir. 2010) (same).

6         Despite termination of the Membership Agreement, however the Reorganized

7    Debtor (as detailed in the Motion and supportive declarations attached hereto) continued

8    to benefit from the use the Best Western Marks without the knowledge or approval of

9    Best Western, and failed to compensate Best Western. Consequently, Best Western is

10   entitled to an administrative expense claim for these unpaid post-assumption, pre-

11   confirmation damages.

12
13
     **C.    The Final Decree Does Not Bar The Administrative Expense Claim Of
            Best Western.**

         Last, the Reorganized Debtor unsuccessfully argues that Best Western is barred

14
15   from pursing its Administrative Expense Claim, and the Reorganized Debtor's

16   unauthorized use of the Best Western Marks, because Best Western agreed to a form of

17   Final Decree [Dkt. #282] closing its bankruptcy case as part of an alleged settlement

18   between the parties under the Stipulation [Dkt. #278]. This argument is factually flawed

19   and contrary to the evidence before this Court. The Stipulation reached between the

20   parties with regard to the Final Decree, however, resolved *only* Best Western's objection

21   to the entry of a final decree (the "BW Decree Objection) [Dkt. #273], and the

22   Reorganized Debtor has provided no facts to prove otherwise. The BW Decree Objection

23   was based solely on the Reorganized Debtor's failure to pay pre-termination membership

24   fees, and had nothing to do with the Debtor's concealed and unauthorized use of the Best

25   Western Marks. *See* BW Decree Objection at p. 2 and Exhibit A (requesting payment for

26   unpaid pre-termination membership fees outstanding as of April 17, 2013). Consistent

     with Best Western's concern about outstanding pre-termination membership fees, the

1  scope of the Final Decree agreed to between Best Western and the Reorganized Debtor

2  references only the bills attached to the BW Decree Objection, which again relate only to

3  pre-termination membership fees.  Equally important, Best Western was not even aware

4  of the continuing improper use of its marks until *after* the Stipulation was executed.

5  Consequently, Best Western did not, and quite frankly could not, have even contemplated

6  a release of any of its claims for pre-confirmation infringement.  Therefore, the

7  Administrative Claim Motion can and should be approved.

8        Other than the objections outlined in this Pre-Trial Memorandum, the Reorganized

9  Debtor asserts no other grounds to oppose the allowance of the Administrative Expense

10  Claim of Best Western.  These objections are questions of that can (and should) be

11

12  resolved by the Court as a matter of law based on the record already before it.  Therefore,

13  Best Western submits that no additional evidence is necessary at the Hearing.

14  **VI.    CONCLUSION.**

15        Based on the foregoing, Best Western respectfully submits that Best Western has

16  met its burden in this case and established its entitlement to an administrative priority

17  claim in the amount of at least $490,723.26.  Therefore, Best Western requests that the

18  Court enter an order approving the Administrative Claim Motion over the Objection of

19  the Reorganized Debtor.

20        RESPECTFULLY SUBMITTED this 10th day of April, 2014.

21

22                                        **GALLAGHER & KENNEDY, P.A.**

23                                  By:*/s/ Craig Solomon Ganz*
                                      Craig Solomon Ganz

24                                        Janel M. Glynn
                                        Tyler J. Carrell

25                                        2575 East Camelback Road
                                      Phoenix, Arizona  85016-9225

26                                        *Attorneys for Best Western International*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**O'NEILL & BORGES, LLC**

By: */s/ Mauricio O. Muñiz-Luciano*
Mauricio O. Muñiz-Luciano
USDC-PR No. 220914
250 Muñoz Rivera Ave., Suite 800
San Juan, Puerto Rico 00918-1813
mauricio.muniz@oneillborges.com

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

1     COPIES of the foregoing mailed this
2     10th day of April, 2014 to:

3     **MAURICIO MUÑIZ LUCIANO**
     O'NEILL & BORGES LLC
4     AMERICAN INTERNATIONAL PLAZA
5     250 MUÑOZ RIVERA AVE., STE. 800
     SAN JUAN, P.R. 00918-1813

6
7     **EDGARDO MUNOZ**
     EDGARDO MUNOZ, PSC
     PO BOX 360971
8     SAN JUAN, PR 00936-0971

9     **FERNANDO J VALDERRABANO**
     MARTINEZ ODELL & CALABRIA
10    PO BOX 190008
     SAN JUAN, PR 00919-0998
11

12    **RAFAEL A GONZALEZ VALIENTE**
     LATIMER BIAGGI RACHID & GODREAU
13    PO BOX 9022512
     SAN JUAN, PR 00902-2512
14

15    **ROBERT T COLLINS**
     FERNANDEZ, COLLINS & RIVERO-VERGNE
16    PO BOX 9023905
     SAN JUAN, PR 00902-3905
17

18    **ALEJANDRO A SUAREZ CABRERA**
     PO BOX 365028
     SAN JUAN, PR 00936
19

20    **ISMAEL H HERRERO III**
     LAW OFFICES ISMAEL HERRERO III PSC
     PO BOX 362159
21    SAN JUAN, PR 00936-2159

22    **JEAN PHILIP GAUTHIER INESTA**
     JEAN PHILIP GAUTHIER LAW OFFFICE
23    1311 PONCE DE LEON AVENUE
     SUITE 601
24    SAN JUAN, PR 00907

25

26

1  **JAVIER G SILVA WISCOVICH**
SILVA-WISCOVICH LAW OFFICES
2  1311 AVE. PONCE DE LEON
SUITE 403
3  SAN JUAN, PR 00907-4011

4  **US TRUSTEE**
EDIFICIO OCHOA
5  500 TANCA STREET SUITE 301
SAN JUAN, PR 00901-1922
6

7  */s/ Rachel H. Milazzo*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26